Summarized briefly the facts in this case are: The plaintiff in error, appellant herein, Koh Iwakami, is the surviving partner of the firm of Iwakami Company, heretofore doing business in Honolulu. In the month of August, 1923, this firm instituted in the circuit court of the first judicial circuit its action in assumpsit against K. Yamamoto for the recovery of judgment in the sum of $6000 with interest, etc., alleged to have been due on certain promissory notes and caused a writ of attachment to be issued and levied upon certain real and personal property then owned by the defendant. Yamamoto thereafter and before the trial of the cause appeared in court and requested that certain of the property attached be released therefrom on the ground that the value of the property under attachment was far in excess of the amount claimed by plaintiff. This application came on before the judge of the circuit court and after hearing the court entered a minute order releasing from the attachment the real estate and household goods theretofore levied upon. Certain other property including three merchandise stores *Page 366 
situated at Wahiawa, Kemoo and Kunia, Oahu, owned by defendant remained under attachment. The real estate discharged from the attachment by the order of the court is lots 8, 10, 12 and 13 in block 33 of what is known as the "Kaimuki Tract" situated at Kaimuki, Oahu. The language of the minute order is: "I will release the real estate from attachment. I will release the household goods from attachment. The rest of the attachment I will hold." This order was entered on September 17, 1923, and was made pursuant to the provisions of section 2787, R.L. 1915.
It appears that Yamamoto was at the time indebted to other creditors including substantial sums to Davies Company, Limited, and Hayama Shoten, both mercantile concerns of Honolulu. On December 21, 1923, in order to secure payment of these latter obligations as well as to liquidate accounts of creditors other than Iwakami Company, Yamamoto executed a mortgage for $12,000 conveying by way of mortgage the Kaimuki tract lots to Charles M. Hite, trustee for Davies Company, and Hayama Shoten, which mortgage was on the same day recorded in the office of the registrar of conveyances. On December 31, 1924, the plaintiff in the assumpsit case appeared in the circuit court on a motion seeking an amendment of the minute order theretofore entered by the court so that the same would show that the attachment was released solely as to the household furniture of the defendant. This motion was duly heard, considered and denied by the court on January 15, 1925. The mortgagee having made default in the payment of the mortgage Hite went into equity, obtained a decree of foreclosure and on January 30, 1925, by direction of the court, sold the property at public sale to Security Investment Company, Limited, the defendant in error herein, for the consideration of $11,000. The Iwakami Company having obtained judgment in its assumpsit action against Yamamoto caused execution to *Page 367 
issue thereon and also had the property sold by the sheriff at public sale, Iwakami Company being the purchaser at that sale; this latter sale having taken place on February 14, 1925. In March, 1926, the Security Investment Company filed its application in the land court of the Territory of Hawaii to register and confirm its title in and to the four lots above described. Koh Iwakami who had become the owner of the property of Iwakami Company appeared in this proceeding and by way of answer denied the petitioner's title to the property and set up his claim to absolute ownership. Following a lengthy hearing the judge of the land court rendered a decision in favor of the applicant and against contestant. From this decision Iwakami perfected an appeal to the circuit court of the first judicial circuit, with a jury. Issues were framed as provided by law and after the introduction of the evidence the cause was submitted to the jury resulting in a verdict for applicant, the defendant in error herein.
Iwakami now comes to this court on a writ of error, assigning eighteen separate specifications of error as grounds for reversal of the judgment entered in the court below. The record before us is voluminous but contains surprisingly little that merits consideration by this court. The present counsel for plaintiff in error with commendable frankness have reduced the specifications of error to four in number. The first of these specifications reads as follows. "The land court erred in denying plaintiff in error's motion to dismiss defendant in error's petition and in allowing defendant in error to amend its petition." In its original application the Security Investment Company, Limited, alleged ownership of the land in itself but during the progress of the trial it developed that while the applicant owned the legal title to the property the same was held by it in trust for Theo. H. Davies Company, Limited, the latter company being the beneficial and equitable owner. *Page 368 
Upon application to the court and over the objection of counsel for Iwakami petitioner was allowed to amend its petition to disclose the true condition of the title as shown by the evidence and Theo. H. Davies Company, Limited, was permitted to file an answer setting forth its interest in the premises. Plaintiff in error's objection to these proceedings was based on the recognized rule in this jurisdiction that a court is not permitted to allow an amendment to a petition when its effect would be to substantially change the petitioner's claim, citingKaeo v. Campbell, 20 Haw. 423. Counsel for plaintiff in error have apparently overlooked the provisions of section 3212, R.L. 1925: "Amendments to the application" (application to register land title) "including joinder, substitution, or discontinuing as to parties, shall be allowed by the court at any time upon terms that are just and reasonable; but all amendments shall be in writing, signed and sworn to, like the original." It seems clear enough that the allowance of the amendment to the petition and the permission granted to the equitable owner to intervene in the proceedings by way of answer and to set up its interest in the property not only did not contravene the statute above quoted but was expressly sanctioned by it.
The second assignment of error embodies the objection of plaintiff in error to the court's refusal to permit plaintiff in error to try an issue which had been heard and determined by the circuit court in the trial of the assumpsit case, Law No. 10333, in January, 1925, which came up on the motion of plaintiff in that case (the present plaintiff in error) to amend the minute order of the court entered therein releasing the property in question from attachment. The plaintiff in the assumpsit case prosecuted no appeal to this court from the decision of the circuit judge who presided at the trial of the assumpsit case refusing to permit any amendment to the minute order but subsequently *Page 369 
attempted to convert the court hearing the land court application into a court of appeal to review the acts of the circuit judge who heard the law action. The question had, of course, becomeres adjudicata and the court below properly declined to permit counsel to again have the matter adjudicated in the hearing in the proceeding to register title. There was obviously no error in the court's refusal to permit this question to become an issue in the case and the court properly gave to the jury petitioner's instruction number one to the effect that the attachment lien theretofore existing on the land had been released by order of the circuit court in Law No. 10333. Petitioner's instruction number fourteen was a mere recital of what the undisputed evidence in the case disclosed and likewise was properly given to the jury.
The third assignment challenges the correctness of the giving of defendant in error's requested instruction number four and refusing to give plaintiff in error's requested instructions Nos. 8, 11, 11B, 12B, 13, 15A, 16, 21, 22 and 23. Instruction number four requested by defendant in error and given by the court is a correct pronouncement of the law which is to the effect that it is not fraudulent for a debtor in failing circumstances to prefer one or more of his bona fide creditors to the exclusion of other creditors, he having a legal right, although insolvent or in failing circumstances, to prefer one or more of his creditors by giving security for and limited to the amount of his valid debt notwithstanding that the claims of other creditors will thereby be delayed or defeated; that such a preference although it may exhaust or reduce the assets of the debtor so as to leave other creditors unpaid and without the means of collecting their claims does not of itself hinder, delay or defraud creditors within the meaning of a fraudulent conveyance to deprive them of any legal rights. (See 12 R.C.L. 536.) *Page 370 
Plaintiff in error's instruction number eight contained an erroneous statement of the law and was in direct conflict with defendant in error's instruction number four theretofore given to the jury and the trial judge very properly denied the request that it be given. Plaintiff in error's instruction number eleven was likewise properly refused because it was based upon the false hypothesis that there was in the record evidence which would have warranted the jury in finding that the mortgage to Davies 
Company was a fraudulent instrument. No such evidence exists. This also applies to instructions 11B, 12B and 13.
We have carefully considered the other instructions requested by plaintiff in error, that is to say, 15A, 16, 21, 22 and 23 and can find no error in the refusal of the court to submit them, or any of them, to the jury. They do not merit further discussion.
The final specification of error is general in its nature and merely recites that the verdict of the jury is contrary to the law, the evidence and the weight of the evidence and that the circuit court erred in accepting the same as the true and lawful verdict in said case. The record fails to support these conclusions. There was an abundance of evidence to sustain the verdict of the jury and we can find no basis for the claim that the verdict contravenes the law. All of the numerous assignments of error have been examined by us with care. We can find no merit in any of them.
If it is true, as now contended, that the circuit judge presiding in the assumpsit case (Law No. 10333) committed error in refusing to grant defendant's motion to amend the minute order entered by the court, he could have secured relief by appeal to this court. For some undisclosed reason he did not choose to take that course nor does it appear that he went into equity on a bill to set aside petitioner's deed on the ground that it was fraudulently obtained *Page 371 
if, as he now appears to contend, such were the case, nor did he avail himself of the Federal Bankruptcy Act. He apparently elected to stand or fall upon such tenuous rights as he may have obtained in the assumpsit proceeding. It should have been plain to him that his attachment lien upon the property had been discharged by order of the court and the mortgage to Mr. Hite being prior to his judgment created a lien superior to his own and the sale of the property under foreclosure of the Hite mortgage discharged it from the judgment lien. The attempt to vest title in plaintiff in error through the medium of the sale conducted by the sheriff under the execution issued upon the judgment was entirely abortive. In view of these facts it appears clear that the defendant in error is the owner of the property and was entitled to have the land registered in its name.
The decree appealed from is affirmed.